# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 5162 | **DATE** | 1/29/2002 |
| **CASE TITLE** | Leon Robinson vs. James Chrans | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Petitioner's petition for writ of habeas corpus is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JAN 3 0 2002 | |
| | Notified counsel by telephone. | | date docketed | 18 |
| | Docketing to mail notices. | | 15 | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 1/29/2002 | |
| | | | date mailed notice | |
| ETV | courtroom deputy's initials | U.S. DISTRICT COURT CLERK 02 JAN 29 PM 5: 30 | ETV | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

LEON ROBINSON,         )

           )

       Petitioner,    )

           )    No.  99 C 5162

    v.          )

           )    Judge Rebecca R. Pallmeyer

JAMES CHRANS, WARDEN,  )

           )

       Respondent.  )

DOCKETED

JAN 3 0 2002

## MEMORANDUM OPINION AND ORDER

Petitioner, Leon Robinson, is serving an 80-year sentence for the July 26, 1991 murder of Ted Bratton. Bratton's body was found in Joliet, Illinois, lying at the base of a cliff from which Petitioner's brother, Ray Robinson, had shoved it after Petitioner beat the victim severely with a baseball bat. Following a jury trial in the Circuit Court of Will County, Petitioner was found guilty of first degree murder on June 15, 1992. Petitioner appealed his conviction and 80-year sentence to the Illinois Appellate Court, which affirmed both on December 30, 1993. On January 8, 1994, Petitioner sought leave to appeal to the Illinois Supreme Court, but that court denied his petition on April 6, 1994.

Proceeding *pro se*, Petitioner filed a petition for post-conviction relief on July 7, 1994. The circuit court dismissed the petition as frivolous on August 1, 1994, but the Illinois Appellate Court concluded on appeal that Petitioner had raised the gist of a meritorious claim and remanded the case to the trial court on July 2, 1996. With the assistance of counsel, Petitioner filed an amended post-conviction petition on December

6, 1996, but the trial court again dismissed the petition on March 9, 1997. This time, the Illinois Appellate Court affirmed on December 5, 1998, and the Illinois Supreme Court denied Petitioner leave to appeal on June 2, 1999.

Petitioner filed his petition for writ of habeas corpus with this court on August 16, 1999, raising six claims. In three of the claims, Petitioner alleges that he was denied the effective assistance of counsel. Petitioner also claims that he was denied due process, that he was denied a fair trial due to allegedly inappropriate prosecutorial comments, and that the trial court abused its discretion in sentencing him. For the following reasons, the petition for writ of habeas corpus is denied.

## FACTUAL BACKGROUND[1]

At Petitioner's trial, Joliet Police Detectives Gordon Corp and Thomas Stein testified that, when they questioned Petitioner on August 7, 1991, Petitioner admitted that he had been with the victim on the night he died. (Illinois Appellate Court's Order of December 30, 1993, at 3, Exhibit A to Respondent's Answer.) Petitioner said that he had caught Bratton rifling through Petitioner's possessions in the abandoned apartment building where Petitioner lived in Joliet, Illinois. *Id.* at 1, 4. Petitioner unsuccessfully tried to get Bratton to leave, and a fight broke out. *Id.* at 4. Petitioner

---

[1]    A federal court reviewing a petition for writ of habeas corpus under 28 U.S.C. § 2254 presumes the state court's factual findings are correct. 28 U.S.C. § 2254(e)(1); *see also Sumner v. Mata*, 449 U.S. 539, 547 (1981). A petitioner has the burden of establishing by convincing evidence that a state court's factual determinations are erroneous. *See U.S. ex rel Green v. Greer*, 667 F.2d 585, 589 n.6 (7th Cir. 1981). Robinson does not challenge the Illinois Appellate Court's factual findings in his petition. The court, therefore, adopts the facts set forth in the Illinois Appellate Court's Order of December 30, 1993, Exhibit A to Respondent's Answer.

hit Bratton with his fist, but then a baseball bat was somehow introduced to the fight. *Id.* Once Petitioner gained control of the bat, he beat Bratton with it until Bratton was unconscious.[2] *Id.* Petitioner further explained to the detectives that he was not sure what happened to Bratton because his brother, Ray, took Bratton away, dragging him down the stairs of the abandoned apartment building. *Id.*

Ray Robinson, the primary witness at Petitioner's trial, provided a more detailed account of the night's events. Ray testified that, on the night of the murder, July 26, 1981, he had been living with his brother and his brother's wife, Kelly Weeks, in an abandoned apartment building at 758 North Broadway, Joliet, Illinois, Petitioner in Room 9, and Ray in Room 10. *Id.* at 1-2. When Ray left work that afternoon at 4:30, he went to the Greyhound bus station located near 758 North Broadway and met with Petitioner, who introduced him to Ted Bratton.[3] *Id.* at 1. According to Ray, Petitioner and Bratton were drinking a bottle of vodka. *Id.* Ray testified that, while Petitioner and Bratton remained at the bus station, Ray went back and forth between the bus station and the home of his friend, known as Bolingbrook, in whose basement he

---

[2]    This detail, that Petitioner used a baseball bat to beat Bratton, was not mentioned in Detective Corp's report of the interview, but it was in Detective Stein's report. It does not appear from the record before this court, however, that Detective Corp challenged Detective Stein's recounting of the interview. Nor does Petitioner, in his petition, dispute that he beat Bratton with a baseball bat.

[3]    Where Ray was employed, and whether or how Ray knew that his brother would be at the bus station, are not explained in the record.

occasionally stayed.[4]  *Id.* at 1-2.  Each time Ray went to Bolingbrook's house, however, Bolingbrook was not at home and Ray returned to the bus station.  *Id.* at 2.

Petitioner eventually asked Bratton if he wanted to spend the night at Petitioner's place and Bratton agreed.  *Id.*  Ray, Petitioner, and Bratton returned to Room 9 at 758 North Broadway, where Petitioner and Bratton continued to drink vodka and Ray drank a beer.  *Id.*  At some point, Petitioner became angry with Ray and told him to leave, so Ray again went to Bolingbrook's house, only to find Bolingbrook still was not at home.  *Id.*  Having no place else to spend the night, Ray returned to 758 North Broadway and from behind the building, he saw Petitioner throw something onto the back porch.  *Id.*  When he got upstairs, Ray saw Bratton's bags on the porch and Bratton himself standing near Room 10, where Petitioner had initially told Bratton he could stay.[5]  *Id.*  Petitioner now told Bratton that he had to leave because no one was allowed to stay for free, but Bratton countered that he intended to sleep in Room 10.  *Id.*

Petitioner somehow managed to lock Bratton out of the building, inside which he and Ray remained.[6]  *Id.*  Petitioner later went outside, and Ray heard talking and

---

[4]  Ray did not explain why he repeatedly went to Bolingbrook's home.

[5]  It is unclear from the record when Petitioner told Bratton which room he could stay in and how Ray learned about this exchange.

[6]  There is no explanation in the record for how Bratton came to be outside, whether he was forced out by either Petitioner or Ray or went outside of his own free will.  Further, it is not clear on what floor of the abandoned building Rooms 9 and 10 are located, nor how Petitioner was able to lock the building.

then a loud noise. *Id.* Ray opened the door to find Petitioner standing with something in his hands, but Petitioner told Ray to shut the door, which he did. *Id.* Hearing the same loud noise, Ray reopened the door and saw Bratton lying on his back with blood on the side of his face, apparently unconscious. *Id.* at 3. Ray now saw that Petitioner held a baseball bat in his hands, and watched Petitioner proceed to hit Bratton several times with the bat. *Id.* Once Petitioner stopped hitting Bratton, Ray testified that Petitioner told him to take Bratton downstairs. *Id.* Ray did take Bratton down the stairs and across a parking lot to the edge of a cliff, accompanied by Petitioner. At the cliff's edge, Petitioner again hit Bratton several times with the baseball bat, and then Ray and Petitioner, together, pushed Bratton off the cliff. *Id.* Ray testified that, at some point after the murder, he told Bolingbrook what had happened and asked Bolingbrook to call the police and tell them where Bratton's body was located.[7] *Id.*

The police, in fact, received two anonymous telephone calls in which the callers reported that Petitioner had beaten someone to death with a baseball bat, and that Ray Robinson feared Petitioner would kill him. *Id.* On August 7, 1991, the police questioned both Ray and Petitioner separately. *Id.* Ray initially told the police that his brother had beaten Bratton, but did not confess his own involvement. *Id.* Ray spoke with the police several more times, however, and ultimately confessed his involvement to the police and the state's attorney's office. *Id.* Ray was promised (the record does not say by whom) that he would not be charged with murder if he testified

---

[7] It is not clear from the record when Ray told Bolingbrook about the murder.

against Petitioner. As of the time of Petitioner's trial, Ray had not been charged with any offense relating to Bratton's murder. *Id.*

In addition to the testimony of Ray, and Detectives Stein and Corp, the prosecution also presented evidence at trial that several items belonging to the victim were found in and about 758 North Broadway. The victim's jacket was found in room 9, as was a state unemployment insurance benefits card in Petitioner's name. *Id.* at 4. Blood was found in the vicinity, a baseball bat was found at the edge of the cliff, and Bratton's body was found at the bottom of the same cliff. *Id.* It was determined that Bratton died from blunt trauma to the cranium, and that his injuries were consistent with having been beaten with a baseball bat. *Id.*

During the trial, the defense asserted that the police officers who questioned Petitioner may not have been telling the truth about what Petitioner told them. *Id.* In closing argument, the prosecutor responded to this allegation by arguing that "Leon Robinson is not worth the charge of perjury, possible prison, the loss of a career, professional humiliation, and if the defense believes that, they flatter themselves far too much." *Id.* at 5-6. The jury found Petitioner guilty of first degree murder on June 15, 1992. *Id.*

On direct appeal, Petitioner argued to the Illinois Appellate Court that he was denied a fair trial because the prosecutor's closing arguments improperly interjected the prosecutor's personal opinion that two of the state's witnesses were credible because they were police officers. *Id.* In a December 30, 1993 order, the Illinois

Appellate Court affirmed Petitioner's conviction and sentence, but acknowledged that the prosecutor had erred in closing argument by interjecting his personal opinion. *Id.* at 6. The court reasoned that, although in many instances such an error would be a material factor in the conviction necessitating a retrial, in this instance, the prosecutor's remarks were not a material factor in Petitioner's conviction. *Id.* The court noted the overwhelming evidence of Petitioner's guilt, including his own statement that he had beaten the victim until he was unconscious, and the victim's jacket, the blood, and the baseball bat, all found in the area. *Id.* The court concluded that the prosecutor's errors were not so serious that Petitioner was denied a fair trial. *Id.* at 7. Petitioner sought leave to appeal to the Illinois Supreme Court, but that court denied his petition on April 6, 1994. (Illinois Supreme Court Order of April 6, 1994, Exhibit B to Respondent's Answer.)

On July 7, 1994, Petitioner, proceeding *pro se*, filed a petition for post-conviction relief charging that his trial counsel was ineffective for failing to interview Joe Beckom. Petitioner asserted he had informed trial counsel that Beckom would testify that Bratton's murder was committed by someone else. (Illinois Appellate Court Order of July 2, 1996, at 1, Exhibit C to Respondent's Answer.) Petitioner further alleged that his appellate counsel was ineffective for failing to argue that his trial counsel was ineffective. *Id.* at 2. The trial court dismissed Petitioner's post-conviction petition as frivolous on August 1, 1994. *Id.* at 1.

The Illinois Appellate Court reversed the dismissal and remanded for further

proceedings on July 2, 1996.  *Id.*  The Appellate Court noted that, "[t]o survive dismissal at this stage, a petition must merely present the gist of a meritorious constitutional claim." *Id.* at 2, *citing People v. Marks*, 239 Ill. App. 3d 178, 181, 607 N.E.2d 286, 288 (3rd Dist. 1993).  The court concluded Petitioner had presented the gist of a meritorious claim because his claims were: "(1) based on matters outside the record; (2) obviously of a constitutional nature . . . (3) factually specific . . . and (4) accompanied by a verifying affidavit from Robinson . . . ."[8] (Illinois Appellate Court Order of July 2, 1996, at 2-3, Exhibit C to Respondent's Answer.)  Finally, the court recognized the absence of an affidavit from Beckom, but found that such an affidavit was not necessary at this initial stage and was instead required "after the appointment of an attorney, who can then make a concerted effort to obtain the supporting affidavit." *Id.* at 3, citing *People v. Treadway*, 245 Ill. App. 3d 1023, 1026, 615 N.E.2d 887, 890 (2nd Dist. 1993).

With the assistance of appointed counsel, Petitioner filed an amended post-conviction petition on December 6, 1996. (Amended Post-Conviction Petition, Exhibit D to Respondent's Answer.)  In the amended petition, Petitioner raised three claims. First, Petitioner alleges that his trial counsel was ineffective for several reasons: (1) for failing to interview and call to testify three witnesses would could have provided exonerating testimony: Joe Beckom, Samuel Dickerson, and Danny Wilder; (2) for failing to call Petitioner to testify due to counsel's erroneous belief that Petitioner

---

[8]     The state did not furnish a copy of this affidavit.

would have been impeached by evidence of a stale felony conviction; and (3) for failing to request a mistrial when the prosecutor made improper statements during closing arguments. *Id.* at 2-3. In his second claim, Petitioner alleged numerous errors by the trial court, including that the court committed reversible error by giving Jury Instruction IPI 5.03 on accountability, and abused its discretion in sentencing Petitioner to an eighty-year term. *Id.* at 4-5. Finally, in his third claim, Petitioner alleged that he was denied the effective assistance of appellate counsel because appellate counsel raised only one claim on appeal when, Petitioner alleged, "the record was replete with other error and omissions. . . ." *Id.* at 7.

On March 3, 1997, the trial court dismissed Petitioner's amended post-conviction petition. (Will County Circuit Court Order of March 3, 1997, Exhibit E to Respondent's Answer.) This time, the trial court found that Petitioner failed to prove that his attorney's representation fell below an objective standard of competence, and that his allegations regarding counsel's failure to call certain witnesses were "insufficient as a matter of law in that [Petitioner] . . . failed to attach affidavits from those witnesses . . . and also failed to explain the significance of their testimony." *Id.* at 2. The trial court also found that, regarding trial counsel's failure to call Petitioner to testify, the "record is bereft of any contemporaneous assertion by the Petitioner of his right to testify, and therefore, it is proper to deny an evidentiary hearing on that basis." *Id.* at 3. With respect to the prosecutor's improper comments in closing arguments, the court found such issues barred by *res judicata* because that issue was decided on appeal. *Id.*

The court also found Petitioner's various allegations of error by the trial court were issues for direct appeal that were "properly defeated by operation of the doctrines of waiver and *res judicata*," and did not "raise issues of constitutional proportion." *Id.* at 3-4. Finally, the court concluded that Petitioner's ineffective appellate counsel claim failed because Petitioner neglected to specify what issues his appellate counsel allegedly failed to raise, and did not show that but for the alleged failures, his conviction would have been reversed. *Id.* at 4.

On appeal, Petitioner argued that the trial court should have granted him an evidentiary hearing on his post-conviction petition because: (1) trial counsel advised Petitioner not to testify based upon counsel's own misunderstanding of the law; (2) trial counsel failed to offer an accomplice instruction; (3) both appellate and post-conviction counsel failed to raise trial counsel's failure to tender an accomplice instruction; and (4) trial counsel failed to "call witnesses who could verify the allegations about trial counsel's failure to investigate." (Illinois Appellate Court Order of February 5, 1999, at 2, Exhibit F to Respondent's Answer.)[9]  In its February 5, 1999 order, the Appellate Court rejected each of Petitioner's four arguments and concluded that he was properly denied an evidentiary hearing. *Id.* at 2. The court found Petitioner's first argument to be without merit because, although Petitioner was correct that a 1967 conviction could not be used to impeach him, Petitioner had five other prior convictions; thus, counsel properly advised him that his testimony could have been impeached by

_____

[9]     It is not clear from the record whether or not Petitioner was represented by counsel during this appeal.

evidence of prior convictions. *Id.* at 3. Regarding trial counsel's failure to tender an accomplice instruction, the court held that Petitioner waived any claim of ineffectiveness by both trial and appellate counsel because he did not raise any such claim in his post-conviction petition, but instead raised it for the first time on appeal of the second denial of his post-conviction petition. *Id.* Furthermore, post-conviction counsel was not ineffective for failing to raise this claim because there is no constitutional right to assistance of post-conviction counsel. *Id.* at 4. Finally, the Appellate Court concluded Petitioner did not show that counsel was ineffective for failing to call witnesses favorable to the defense because Petitioner did not provide affidavits from those witnesses, nor explain the significance of their testimony. *Id.* at 5.

On February 19, 1999, Petitioner sought leave to appeal to the Illinois Supreme Court, but that court denied his petition on June 2, 1999.[10] (Illinois Supreme Court Order of June 2, 1999, Exhibit G to Respondent's Answer.) Petitioner filed his petition for writ of habeas corpus (hereinafter, the "Petition") with this court on August 6, 1999. In his Petition, Petitioner argues that (1) his Fourteenth Amendment rights were violated because of inappropriate prosecutorial comments that denied him a fair trial; (2) his Sixth and Fourteenth Amendment rights were violated because both trial and appellate counsel were ineffective for failing to challenge the trial court's error in denying a jury instruction relating to Petitioner's failure to testify; trial counsel was

---

[10]     Petitioner's petition for leave to appeal is not in the record, so the court does not know what issues Petitioner raised in it.

ineffective for failing to tender an accomplice instruction; and appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness; (3) his Sixth and Fourteenth Amendment rights were violated because appellate counsel failed to argue on appeal the trial court's error in denying Petitioner's motion to suppress his statement; (4) his Eighth and Fourteenth Amendment rights were violated because the trial court abused its discretion when sentencing Petitioner to eighty years in prison without considering Petitioner's rehabilitative potential; (5) his Sixth and Fourteenth Amendment rights were violated when trial counsel failed to call witnesses favorable to the defense; and (6) he was denied due process, equal protection and fundamental fairness where the trial court committed errors of constitutional magnitude, including giving the prosecution's proffered accountability instruction over Petitioner's objection.

## DISCUSSION

Section 2254 of the Anti-Terrorism and Effective Death Penalty Act entitles a prisoner to a writ of habeas corpus if he is being held in prison pursuant to a state court judgment obtained in violation of the Constitution. 28 U.S.C. § 2254; *Williams v. Taylor*, 529 U.S. 362, 375, 120 S. Ct. 1495, 1504 (2000); *Lowery v. Anderson*, 225 F.3d 833, 838 (7th Cir. 2000). With respect to any claim that was adjudicated on the merits in state court proceedings, a federal court will not grant a writ of habeas corpus unless that state decision (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C.

§ 2254(d)(1) & (2); *Winters v. Miller*, 274 F.3d 1161, 1164 (7th Cir. 2001); *Hough v. Anderson*, 272 F.3d 878, 889 (7th Cir. 2001). This court, however, will not address the merits of a habeas corpus petition unless the petitioner can show that he has exhausted his state remedies and avoided procedural default. *U.S. ex. rel. Bell v. Pierson*, 267 F.3d 544, 551 (7th Cir. 2001).

Habeas relief is only available to a petitioner who has exhausted his state remedies by presenting his claims fully and fairly to the state courts. 28 U.S.C. § 2254. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). In *O'Sullivan*, the Supreme Court explained that "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." 526 U.S. at 845. In Illinois, "one complete round" is finished once the petitioner has presented his claims, whether on direct appeal or on post-conviction review, at each stage of the appellate process, up through and including the Illinois Supreme Court. *See id.* at 847-48.

Where a petitioner has procedurally defaulted on his claims, a federal court will only review such defaulted claims if the petitioner can show: (1) cause for failure to raise the claim, and actual prejudice resulting therefrom; or (2) that refusal to consider the defaulted claim would result in a fundamental miscarriage of justice, meaning that the constitutional violation "has probably resulted in the conviction of one who is

actually innocent." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Anderson v. Cowan*, 227 F.3d 893, 899-900 (7th Cir. 2000); *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

## A.    Prosecutorial comments denied Petitioner a fair trial

Petitioner's first claim is that his Fourteenth Amendment rights were violated when the prosecutor commented during closing arguments that the police officers who had testified against Petitioner had told the truth because Petitioner was not worth the repercussions they would face for lying. The Illinois Appellate Court rejected this precise claim on its merits on Petitioner's direct appeal. (Illinois Appellate Court Order of December 30, 1993, at 1, Exhibit A to Respondent's Answer.) As explained above, the Appellate Court found that the prosecutor's comments, though improper, were not a material factor in Petitioner's conviction in light of the other overwhelming evidence of Petitioner's guilt. *Id.* at 6. On consideration of Petitioner's amended post-conviction petition, the trial court refused to reconsider this same claim finding it barred by *res judicata* due to the Appellate Court's decision on the issue. (Will County Circuit Court Order of March 3, 1997, at 3, Exhibit E to Respondent's Answer.)

As noted above, because this issue has already been decided on its merits in state court proceedings, this court will grant habeas corpus relief only if that state decision was contrary to clearly established federal law, or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(1) & (2); *Winters*, 274 F.3d at 1164; *Hough*, 272 F.3d at 889. Petitioner makes no mention of the state court's decision on

the issue, and thus, did not allege that the decision was either contrary to or an unreasonable application of Federal law. In any event, the court finds such an argument would have been unsuccessful.

The jury's decision to convict Petitioner could not have been a close call; as the Appellate Court noted, the "evidence of guilt in this case is so overwhelming that even the testimony of [Petitioner's] brother [the only eyewitness in the case] would have been unnecessary for a conviction." (Illinois Appellate Court Order of December 30, 1993, at 6, Exhibit A to Respondent's Answer.) This court agrees that, where prosecutorial misconduct was not a material factor in Petitioner's conviction, the state court's decision upholding his conviction is not unreasonable.

In *Rodriguez v. Peters*, 63 F.3d 546, 559 (7th Cir. 1995), the Seventh Circuit affirmed the district court's denial of a habeas petition in similar circumstances. The prosecutor in the trial of that case violated an *in limine* ruling when, in rebuttal closing argument, he referred to the state's having relocated a witness to protect that witness from retaliation by the petitioner. *Id.* at 558. The Seventh Circuit agreed that petitioner was not denied a fair trial because the comments were far from "inflammatory" and "only tangentially" bolstered the relocated witness's testimony, and that there was "overwhelming" evidence mounted against petitioner.[11] *Id.* at 559.

---

[11]    The court recognizes that, in *Rodriguez*, promptly after the prosecutor commented on the witness relocation, the trial judge responded to defense counsel's objection by admonishing the jury that this comment was irrelevant and not supported by the evidence adduced at trial. Here, Petitioner's counsel apparently failed to object to the prosecutor's closing arguments in this case.

The court further noted that the defense had, to some extent, invited the commentary when, during its own closing argument, it suggested that the prosecutor's statement that the witness was reluctant to testify for fear of being retaliated against was not supported by the evidence. *Id.* at 559. Likewise in the present case, the prosecutor's comment, though improper, did not endanger tipping a close evidentiary balance in favor of the prosecution, not only because the evidence was not closely balanced, but also because the comment "bolstered [the police officers'] credibility 'only tangentially.'" Furthermore, prior to the prosecutor's closing, Petitioner's attorney had asserted that the police officers who questioned Petitioner may not have been telling the truth about Petitioner's statements, and the prosecutor's closing comments were clearly in response to that allegation. (Illinois Appellate Court Order of December 30, 1993, at 4, Exhibit A to Respondent's Answer.) From Petitioner's own statement, to the testimony of his brother, to the physical evidence found at the scene of the murder, the evidence against Petitioner was momentous. The court concludes that the "strong evidence of guilt eliminates any lingering doubt that the prosecutor's remarks unfairly prejudiced the jury's deliberations," and that these comments did not "so infect the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Gonzalez,* 933 F.2d 417, 432 (7th Cir. 1991); *United States v. Reed,* 2 F.3d 1441, 1450 (7th Cir. 1993).

## B.   Ineffective assistance of counsel regarding jury instructions

In his second claim, Petitioner alleges that his trial counsel was ineffective for failing to tender an accomplice witness instruction, and that his appellate counsel was

16

ineffective for failing to raise this fault on the part of his trial counsel.[12] The Illinois

Appellate Court rejected this argument on February 5, 1999, when it affirmed the

dismissal of Petitioner's amended post-conviction petition. (Illinois Appellate Court

Order of February 5, 1999, at 3-4, Exhibit F to Respondent's Answer.) The Illinois

Appellate Court refused to consider the merits of this claim, finding Petitioner had

waived the issue because he did not raise it in either his first or amended post-

conviction petition, but instead, raised it for the first time with the Appellate Court on

appeal of the dismissal of his amended post-conviction petition. *Id.* at 3. Citing *People*

*v. Orange*, 168 Ill. 2d 138 659 N.E.2d 935 (1995), the Appellate Court observed that

Illinois law provides that any claim not raised in a post-conviction petition is waived.

*Id.*

The Appellate Court's conclusion that Petitioner waived this claim "constitutes

an independent and adequate state ground for its decision, and bars federal review of

the issue." *Whitehead v. Cowan*, 263 F.3d 708, 726-27 (7th Cir. 2001). In other words,

this court "is barred from reviewing a question of federal law 'when a state court

declined to address a prisoner's federal claims because the prisoner had failed to meet

a state procedural requirement.'" *Schaff v. Snyder*, 190 F.3d 513, 524 (7th Cir. 1999),

*quoting Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). The Appellate Court's

---

[12]    Although Petitioner was not entirely clear about what he believes the jury
should have been instructed, the court assumes he wanted an instruction similar to
Illinois Pattern Instruction Number 3.17 which states: "When a witness says he was
involved in the commission of a crime with the defendant, the testimony of that
witness is subject to suspicion and should be considered by you with caution. It should
be carefully examined in light of the other evidence in the case."

finding of waiver also supports the conclusion that Petitioner procedurally defaulted this claim, and therefore, this court will consider it only if Petitioner can make the requisite showing of either cause and prejudice, or a fundamental miscarriage of justice. *Schaff*, 190 F.3d at 526. Petitioner makes neither argument here. This court finds nothing in the record that would support a cause and prejudice argument excusing Petitioner's procedural default, and because Petitioner does not assert he is innocent of the crime, there is no danger that a fundamental miscarriage of justice will result from this court's refusal to consider the merits of Petitioner's procedurally defaulted claim.

## C. Ineffective assistance of appellate counsel regarding involuntary statement

Petitioner's third claim for habeas relief is that his appellate counsel was ineffective because he failed to challenge the trial court's ruling denying Petitioner's motion to suppress his statement. In the Petition, Petitioner claims that prior to the trial, he had moved to suppress his statement to the police, contending that the arresting officers did not advise him of his *Miranda* rights at the time he was interrogated, but the trial court denied the motion. For reasons that elude the court, the state waives reliance on Petitioner's obvious procedural default of this claim (it has never been raised before the Illinois courts), by failing to assert the default in this court. *See Hernandez v. Cowan*, 200 F.3d 995, 997 (7th Cir. 2000). The state instead insists that Petitioner failed to meet his burden of showing that the Appellate Court's decision is contrary to Supreme Court law. (Respondent's Answer at 6.) The Appellate Court,

18

however, only considered one claim of ineffective assistance of appellate counsel; that is, the claim discussed above regarding trial counsel's failure to tender an accomplice jury instruction. (Illinois Appellate Court Order of February 5, 1999, at 3, Exhibit F to Respondent's Answer.) Thus, the court is uncertain what aspect of the Appellate Court's decision the state expects Petitioner to address.

Nonetheless, the court finds Petitioner's claim lacks merit. Petitioner could only succeed on an ineffective assistance of appellate counsel claim if he can show that: (1) his counsel's performance was so deficient that it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense to the degree that it deprived the defendant of a fair trial, that is, a trial whose result is reliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Petitioner also "must identify the specific acts or omissions of counsel that form the basis for his claim of ineffective assistance." *Momient-El v. DeTella,* 118 F.3d 535, 541 (7th Cir. 1997). *Strickland's* standard is highly deferential to counsel, "presuming reasonable judgment and declining to second guess strategic choices." *Valenzuela v. United States*, 261 F.3d 694, 698 (7th Cir. 2001). To determine whether Petitioner has shown the first prong of the *Strickland* test, the performance prong, the court will "consider the reasonableness of counsel's conduct in the context of the case as a whole, viewed at the time of the conduct, and there is a strong presumption that any decisions by counsel fall within a wide range of reasonable trial strategies." *Valenzuela*, 261 F.3d at 698-99, *quoting United States v. Lindsay*, 157 F.3d 532, 535 (7th Cir.1998). Turning to the second

*Strickland* prong, the prejudice prong, Petitioner must "be able to demonstrate that the complained of deficiency resulted in . . . [a] 'reasonable probability' that in the absence of error the result of the proceedings would have been different, and [that the proceeding] was fundamentally unfair or unreliable." *Valenzuela*, 262 F.3d at 699; *Williams v. Washington,* 59 F.3d 673, 682 (7th Cir.1995), *quoting Strickland,* 466 U.S. at 694.

Petitioner has made no showing under either the first or second *Strickland* prongs. The court finds nothing in the record to rebut the presumption that appellate counsel rendered reasonably effective assistance. The Seventh Circuit has "repeatedly emphasized that appellate counsel need not advance every conceivable argument on appeal." *Herrera v. United States,* 108 F.3d 1379 (7th Cir. 1997). Rather, appellate counsel is "only constitutionally ineffective if 'counsel fails to raise issues that are (1) obvious, and (2) clearly stronger than the ones raised.'" *Id., quoting Kelly v. United States,* 29 F.3d 1107, 1112 (7th Cir. 1994). In addition to making no argument under *Strickland*, Petitioner does not suggest that the trial court's alleged error with respect to denying his motion to suppress presented either an obvious or strong basis for appeal. Petitioner's third claim for habeas relief is denied.

## D. Trial court abused discretion in imposing 80-year sentence

Petitioner alleges that the trial court abused its discretion by imposing an 80-year sentence without considering his rehabilitative potential. The state responds that Petitioner procedurally defaulted this claim because he did not raise it before the

Illinois courts. The state is mistaken; Petitioner did raise this claim in his amended post-conviction petition: although he did not use the words "rehabilitative potential," Petitioner asserted an identical claim when he charged that the "Court failed to take into consideration the fact that the Petitioner had led a law-abiding life for a substantial period of time before the offense . . . [and] that his character and attitudes indicate he is unlikely to commit another crime." (Amended Post-Conviction Petition, at 5-6, Exhibit D to Respondent's Answer.) Considering this claim on review of Petitioner's amended post-conviction petition, the Circuit Court of Will County noted that Petitioner's amended post-conviction petition was a "collateral attack on a prior judgment . . . not an appeal from the underlying conviction and sentence and . . . Petitioner cannot obtain relief . . . simply by rephrasing previously addressed issues in constitutional terms . . . ." (Circuit Court of Will County Order of March 3, 1997, at 3, Exhibit E to Respondent's Answer.) In dismissing Petitioner's amended post-conviction petition, the court reasoned that "such claims are properly defeated by operation of the doctrines of waiver and res judicata." *Id.* Petitioner appears to have subsequently abandoned this claim, however. The Illinois Appellate Court recited the claims Petitioner raised on appeal, but Petitioner did not raise the trial court's abuse of discretion in sentencing before the Appellate Court. Thus, although the state was wrong in arguing that Petitioner completely failed to raise this claim in the state courts, Petitioner did procedurally default the claim by failing to present it at every stage of the appellate process, up through and including the Illinois Supreme Court. *See O'Sullivan*, 526 U.S. at 845.

21

Petitioner did not set forth a cause and prejudice argument justifying his default. Instead, he made the bare statement that "[s]urely, the appellate counsel should have raised this issue on appeal, his failure to do so deprived petitioner of the effective assistance of counsel." Where, as here, ineffective assistance of appellate counsel is asserted as cause for a procedural default of another claim (in this instance the abuse of discretion in sentencing claim), ineffective assistance is a separate claim that must itself be presented to the Illinois courts. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). Petitioner never raised a claim before the Illinois courts that his appellate counsel was ineffective for failing to raise the trial court's alleged abuse of discretion in sentencing him. Therefore, Petitioner cannot raise this claim before a federal court as cause for the procedural default of the abuse of discretion claim. In addition to failing to show cause for the default, Petitioner also failed to show that he was actually prejudiced by it.

In a reply brief, Petitioner makes the bare assertion that the court should review his claims "[d]ue to a fundamental miscarriage of justice." Although Petitioner used these "key" words, they are not sufficient. As the Supreme Court has explained, to prevent a fundamental miscarriage of justice a federal court may look past the default of a claim where the constitutional violation "has probably resulted in the conviction of one who is actually innocent." *Edwards*, 529 U.S. at 451; *Anderson v. Cowan*, 227 F.3d 893, 899-900 (7th Cir. 2000). Petitioner does not maintain, nor make any showing that, he is actually innocent of the crime. To the contrary, his Petition acknowledges that "the events leading to the death of Bratton indicate terrible judgment for which

Petitioner must be held accountable . . . ." (Petition at 20-21.) Due to Petitioner's procedural default of the claim that the trial court abused its discretion in sentencing him, and his failure to show either cause and prejudice, or a fundamental miscarriage of justice, this court cannot consider the merits of this claim.

## E.    Ineffective assistance regarding failure to call witnesses

Petitioner's fifth claim alleges that he was denied the effective assistance of trial counsel because counsel failed to call certain witnesses Petitioner contends would have been favorable to the defense. The Illinois Appellate Court previously dismissed this claim on its merits. The Appellate Court noted the requirement that when a petitioner "attacks the competency of counsel for failing to call or contact witnesses, he must attach affidavits from those witnesses to his post-conviction petition and explain the significance of their testimony." (Illinois Appellate Court Order of February 5, 1999, at 5, Exhibit F to Respondent's Answer; *citing People v. Montgomery*, 141 Ill. App. 3d 428, 490 N.E.2d 206 (4th Dist. 1986).) The court recognized Petitioner's failure to comply with this requirement: Petitioner only attached the affidavit of Paul Drdak, an investigator for the Will County public defender's office, who stated that on the day after the murder, Joe Beckom told Drdak that Danny Wilder had told Beckom that someone else murdered the victim. (*Id.* at 4.) The Appellate Court concluded that this affidavit did not entitle Petitioner to an evidentiary hearing, particularly where the "entire contents of the affidavit are hearsay and . . . therefore insufficient." (*Id.* at 5, *citing People v. Cole*, 215 Ill. App. 3d 585, 575 N.E.2d 10 (3rd Dist. 1991).)

Petitioner does not assert that the Illinois Appellate Court's resolution of this

issue was either contrary to or an unreasonable application of federal law, nor does Petitioner claim that the decision was based on an unreasonable determination of the facts in light of the evidence. Where Petitioner failed to make either such showing, this court cannot consider the merits of a claim already adjudicated on its merits in state court proceedings. Furthermore, to the extent the Appellate Court's resolution of this evidentiary issue was based on procedural grounds, rather than on the merits, the court rejected Petitioner's argument on independent and adequate state law grounds and Petitioner does not show either cause and prejudice, or a fundamental miscarriage of justice to excuse the default. Petitioner's fifth claim does not entitle him to habeas relief.

## F.     Trial court and counsel committed errors of constitutional magnitude

In his sixth and final claim for habeas corpus relief, Petitioner alleges that he was denied due process and equal protection due to the trial court's and counsel's various errors of constitutional magnitude. More specifically, Petitioner charges that allowing the state to tender an accountability jury instruction denied him due process, that counsel's failure to call him to testify denied him due process, and that counsel's failure to preserve these issues for appeal rose to the level of ineffective assistance of counsel. To the extent these issues were raised before the Illinois courts, they were denied on their merits, and to the extent they were not raised, they were procedurally defaulted. Although Petitioner never alleged that he was denied due process because of the accountability instruction, he did allege that the trial court erred in allowing the instruction, but abandoned the claim on appeal of the trial court's dismissal of his

amended post-conviction petition. (Illinois Appellate Court Order of February 5, 1999, at 2, Exhibit F to Respondent's Answer.) Similarly, Petitioner did not allege that counsel's failure to call him to testify denied him due process, but did allege that this failure amounted to ineffective assistance, and the Illinois Appellate Court denied this latter claim on its merits. (*Id.* at 2-3.) Finally, Petitioner never alleged that his trial counsel was ineffective for failing to preserve for appeal these two denial of due process claims.

Petitioner does not contend that he can show cause and prejudice to excuse the procedural default of these claims, nor does he contend that a fundamental miscarriage of justice will occur if this court does not consider the merits of the claims. Just as with Petitioner's previous procedurally defaulted claims, the court does not find anything in the record that would support a cause and prejudice argument, and because Petitioner does not maintain he is innocent, no fundamental miscarriage of justice concerns arise. Petitioner raised similar versions of these claims in the state courts, but Petitioner does not suggest that the manner in which he raised the claims constituted a full and fair presentation of the issues before the state courts. Such an argument would have been futile, however, because to the extent the issues were considered by the state courts, they were rejected. Petitioner does not argue that the state court decisions were contrary to federal law, nor does he suggest that the decisions were unreasonable in light of the evidence. Therefore, Petitioner's final claim fails to show that he is entitled to a writ of habeas corpus.

## **CONCLUSION**

Petitioner's petition for writ of habeas corpus is denied.

ENTER:

Dated: January 29, 2002

REBECCA R. PALLMEYER
United States District Judge